Anthony T. King, Bar No. 027459
Megan M. Carrasco, Bar No. 037109
SNELL & WILMER LLP
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:    602.382.6000
Facsimile:    602.382.6070
Email: aking@swlaw.com
         mcarrasco@swlaw.com

*Attorneys for Defendant Agility Insurance Services, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Ryan Bahr, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Agility Insurance Services, LLC, and Justin Surkes,<br><br>Defendants. | Case No. 2:26-cv-01756-JAT<br><br>**DEFENDANT AGILITY INSURANCE SERVICES, LLC'S MOTION TO BIFURCATE DISCOVERY** |

Defendant Agility Insurance Services, LLC ("Defendant" or "Agility") respectfully moves the Court to bifurcate discovery in this Telephone Consumer Protection Act ("TCPA") class action case. Federal courts frequently bifurcate discovery in putative TCPA class actions to promote efficiency and cost-effectiveness for all parties involved, as well as for judicial economy. This is especially the case where, as here, bifurcation of discovery focused on plaintiff-specific issues may be dispositive to his TCPA claims.

Plaintiff is a serial TPCA plaintiff who has filed multiple TCPA class actions within a short one-year period, including at least five (5) separate TCPA class actions in the District of Arizona alone (including this one). But more importantly, Plaintiff's individual TCPA claims present case dispositive threshold issues. Such issues include (1) whether Plaintiff is a residential telephone subscriber, (2) whether Plaintiff properly registered his

4916-0566-3426

telephone number on the National Do Not Call Registry, (3) whether Plaintiff received more than one phone call from Defendants in a 12-month period, (4) whether Plaintiff received any calls with pre-recorded messages, (5) whether Plaintiff gave his prior express written consent to be called (or otherwise consented to or encouraged the calls), (6) whether Plaintiff has standing to bring his TCPA claims or would be an appropriate class representative for the alleged Classes, and (7) whether Agility can be directly or vicarious liable for any of the phone calls allegedly made by Defendant Justin Surkes ("Surkes") to Plaintiff. If Plaintiff cannot establish even one of these issues (and Agility believes discovery will reveal that Plaintiff cannot establish more than one), then Plaintiff's individual TCPA claims will fail, he will not be an adequate or typical class representative, and the class action complaint should be dismissed.

Consequently, Agility proposes a short Phase 1 discovery period focused on Plaintiff's individual TCPA claims against Agility and the issues identified above. Phase 1 discovery would conclude with dispositive motion practice. Indeed, many courts have bifurcated discovery in other TCPA class action cases to focus on these types of narrow and dispositive disputes concerning a plaintiff's individual TCPA claims against the defendant in order to conserve resources both for the Court and the parties. *See, e.g.*, *Moore v. Demand Sci. Grp., LLC*, No. 1:22-CV-01539, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) ("The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation [23] because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal."). *See also* Section II, *infra*.

Bifurcation will not cause material duplication of efforts in discovery and will not prejudice either side. Agility believes bifurcation of discovery will promote judicial economy and the spirit of Rule 1, which provides that the Rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

4916-0566-3426

Thus, Agility respectfully requests that the Court grant this Motion and bifurcate discovery as requested herein.

This Motion is supported by the following memorandum of points and authorities and the Court's record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this action on behalf of himself and others for alleged violations of the TCPA. *See* Doc. 1; Doc. 13. After Agility filed a motion to dismiss Plaintiff's initial complaint, Plaintiff filed a First Amended Complaint ("FAC"). *See* Doc. 13.

In the FAC, Plaintiff asserts two individual claims on behalf of himself: (1) for calls that he allegedly received from Defendants after he allegedly placed his phone number on the National Do Not Call Registry (the "DNC Claim") and (2) for calls that he allegedly received from Defendants that allegedly used pre-recorded messages without his prior express written consent (the "Pre-Recorded Message Claim") (collectively, the "TCPA Claims"). *See* Doc. 13 ¶¶ 116-125. Plaintiff also seeks to represent classes of persons, under Rule 23, that have either or both a DNC Claim and a Pre-Recorded Message Claim and alleges that he "will fairly and adequately represent and protect the interests of the Classes." *See id.* ¶¶ 101-103.

As pertaining to himself specifically, Plaintiff alleges he registered his telephone number with the National DNC Registry on November 15, 2024, and that he uses his telephone number "for residential purposes and is not associated with a business." Doc. 13 ¶¶ 26-27. Plaintiff alleges he "received at least five calls from the Defendants from March 2025 to October 2025. *See id.* ¶ 30. For each call, Plaintiff alleges he "received an avatar robot call" and "heard the same artificial voice of a robot." *See id.* ¶¶ 32-33, 35, 37-38, 40-44. For the last call on October 30, 2025, Plaintiff alleges he spoke for the first time with a "live human agent who identified himself as Justin Surkes." *Id.* ¶ 46. Plaintiff alleges that Surkes stated he worked for Agility and provided a call back number for Plaintiff to call him. *Id.* ¶ 47. Plaintiff alleges he then called back Surkes at the number provided, and "it

- 3 -

connected him to Defendant Agility's business." *Id.* ¶ 49. Based on these alleged calls, Plaintiff contends that Agility is liable for Surkes's alleged conduct. *See id.* ¶¶ 67, 72, 74.

Both Defendants deny calling Plaintiff. Agility's position (among others) is that Surkes is an independent contractor producer for Agility, and Agility is not directly or vicariously liable for Surkes's alleged conduct. *See* Doc. 22 ¶¶ 23, 55, & at p. 11. Surkes also denies making calls to Plaintiff, as alleged by Plaintiff, and/or lacks sufficient information or knowledge concerning the alleged calls (and therefore denies the same). *See* Doc. 23 ¶¶ 32-47. Surkes also denies telling Plaintiff that he worked for Agility. *See id.* ¶ 47. Both Agility and Surkes further deny calling Plaintiff "using a pre-recorded messages without their prior express written consent." *Compare* Doc. 13 ¶¶ 43, 45, 122 (alleging that an "avator robot" called Plaintiff "using a pre-recorded messages without their prior express written consent"); *with* Doc. 22 ¶¶ 43, 45, 122 & Doc. 23 ¶¶ 43, 45, 122 (denying same).

This is not the only lawsuit that Plaintiff has filed under the TCPA. Plaintiff has filed at least four other TCPA class actions in the District of Arizona alone. *See*, *e.g.*, *Bahr v. Health Insurance Associates LLC*, No. 2:25-cv-01582-MTL (filed May 8, 2025); *Bahr v. SelectQuote Ins. Servs. Inc.*, No. 2:25-cv-01703-MTL (filed May 19, 2025); *Bahr v. Securico Life Ins. Co.*, No. 2:25-cv-02721-DWL (filed July 31, 2025); *Bahr v. Cactus Leads LLC*, No. 2:26-cv-00015-MTL (filed Jan. 1, 2026). Plaintiff has also filed multiple TCPA class action lawsuits in other jurisdictions, including in the Southern District of Florida and the Western District of Texas. *See*, *e.g.*, *Bahr v. MAPD Helpdesk LLC*, No. 9:25-cv-81057-WPD (S.D. Fla., filed Aug. 25, 2025); *Bahr v. Fla. Ins. Servs., Inc.*, No. 2:26-cv-14058-AMC (S.D. Fla., filed Feb. 19, 2026); *Bahr v. Securico Life Ins. Co.*, No. 1:25-cv-01950-DAE (W.D. Tex., filed Nov. 25, 2025) (this case was transferred from District of Arizona to Western District of Texas). Thus, including the instant class action, Plaintiff has filed at least seven (7) separate TCPA class actions from May 2025 to March

- 4 -

4916-0566-3426

2026, a period of less than one year.[1]

## II.    ARGUMENT

The Court has discretion to bifurcate discovery and should exercise that discretion here. Plaintiff's TCPA Claims present individual threshold issues that should be addressed first. Doing so will be more efficient for all involved and promote judicial economy and the spirit and purpose of both Rule 1 and 23. Consequently, Plaintiff cannot and will not be prejudiced.

### A.    This Court Has Discretion to Grant Bifurcation of Discovery to Serve the Just, Speedy, and Inexpensive Determination of This Case.

Federal Rule of Civil Procedure 42 "gives the court broad discretion to bifurcate proceedings for convenience or to avoid prejudice, or to expedite and economize." *Sapan v. Fin. of Am. Reverse LLC*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935, at *1 (C.D. Cal. July 14, 2025) (cleaned up). Federal courts have broad discretion to control their dockets, including ordering bifurcation or otherwise modifying a scheduling order to fit the needs of a particular case. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (explaining the Court has the inherent power to "stay proceedings" and control its docket "with economy of time and effort for itself, for counsel, and for litigants" under the Court's discretion); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery. Such rulings will not be overturned unless there is a clear abuse of discretion."); Fed. R. Civ. P. 16(b)(4) (allowing modification of a scheduling order for "good cause" and the Court's approval).

Courts consider four factors in deciding whether to bifurcate discovery: "(1) the overlap between individual and class discovery; (2) whether bifurcation will promote Rule 23's requirement that certification be decided at 'an early practicable time'; (3) judicial economy; and (4) any prejudice reasonably likely to flow from the grant or denial of a stay

---

[1] While there are seven (7) total cases identified here, the lawsuit Plaintiff filed against Securico Life Insurance Company in Arizona was transferred to the Western District of Texas. Consequently, this TCPA case that Plaintiff filed against Agility and Surkes marks the seventh (7th) TCPA class action filed by Plaintiff.

4916-0566-3426

of class discovery." *Sapan*, 2025 WL 1932935, at *2 (quoting *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-02219, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015)). Under these factors, district courts have frequently ordered bifurcation of discovery where, as here, there is "some limited first-stage [discovery]" that could "stave off substantial wasted efforts", *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16 C 9281, 2018 WL 3474444, at *6 (N.D. Ill. July 19, 2018), and/or bifurcation serves judicial economy and does not unfairly prejudice any party, *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (citing Fed. R. Civ. P. 42(b)). *See also Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, 2017 WL 2733758, at *1–3 (M.D. Fla. June 26, 2017) ("Within a district court's discretion in managing its cases in order to ensure that the cases move to a timely and orderly conclusion falls the discretion to bifurcate discovery.") (collecting cases).

Federal district courts have frequently bifurcated discovery in putative TCPA class actions so the parties can focus first on plaintiff-specific discovery before addressing broader class-wide issues. *See, e.g.*, *Moore*, 2024 WL 175743, at *1; *Newell v. Aliera Healthcare, Inc.*, No. 1:19-CV-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020); *Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at *1 (D. Md. Jan. 12, 2021); *Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024). These courts, among others nationally, have recognized that bifurcating discovery to focus first on a plaintiff's individual claim is often more efficient for all parties involved because it may eliminate or at least streamline the remaining issues. *Osidi v. Assurance IQ, LLC*, No. 21-CV-11320-ADB, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) ("[T]he need for class discovery may be eliminated if Defendant is able to demonstrate that the Named Plaintiff lacks viable individual claims."); *Newell*, 2020 WL 13568762, at *3 ("[D]epending on what evidence is ultimately presented, the Court may determine that Plaintiff's individual TCPA claim fails as a matter of law."); *Harris v. Shore Funding Sols. Inc.*, No. 23CV00789JMAJMW, 2023 WL 3440077, at *3 (E.D.N.Y. Apr. 21, 2023) ("[L]imiting discovery for a certain period as to whether Defendant in fact even called Plaintiff at that number would be efficient and avoids costly

4916-0566-3426

and potentially unnecessary class discovery in this matter."); *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *3 (N.D. Ohio May 30, 2023) ("The Court finds that bifurcation of discovery to first address the individual liability claims, and then to entertain possible summary judgment motion practice on Plaintiffs' individual claims, prior to class action discovery, is appropriate."); *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims[.]"); *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 7856269, at *2 (S.D. Fla. Nov. 27, 2012) ("[T]he Court agrees that in the interests of efficiency, Defendant should be allowed to conduct discovery on and submit a dispositive motion as to Plaintiff's individual claims.").

As these courts and others have acknowledged, TCPA cases often present narrow, case-dispositive issues that make them prime candidates for bifurcation. These issues, such as among others, standing, consent, and Do Not Call Registry registration, can be investigated and resolved quickly with bifurcated discovery—as opposed to costly class-wide discovery when a plaintiff's individual claim may ultimately fail. *See, e.g.*, *Physicians Healthsource, Inc.*, 2012 WL 7856269, at *1-*2 (ordering bifurcation when defendant "made a plausible argument that it may be able to prevail on the merits against Plaintiff's individual claims" and that the inconvenience of a handful of duplicative witness interviews "that inconvenience is insufficient to outweigh the advantages potentially gained by resolving the individual claims at an early stage"); *Katz*, 2019 WL 957129, at *2 ("[T]he need for class discovery may be eliminated if Liberty Power is able to demonstrate that all of the named Plaintiffs lack viable individual claims.").

Of course, bifurcated discovery may not be appropriate in every instance—that is, automatically separating individual and class discovery is not a one-size-fits-all approach—but here, discovery will focus on narrow issues unique to Plaintiff's individual TCPA claim and require no class discovery. For example, determining whether Plaintiff

4916-0566-3426

consented to the calls, whether Plaintiff received more than 1 call from Defendants within a 12-month period, whether Plaintiff received calls using pre-recorded messages from Surkes, and whether Plaintiff is residential telephone subscriber (under the TCPA), are all specific to Plaintiff. A short period of individual discovery allows the parties to resolve these issues efficiently and early in the litigation. There is virtually zero downside to verifying Plaintiff's claims first. If Plaintiff is unable to prove the required elements for his TCPA Claims, then all parties and the Court will be relieved of the expense of class-wide discovery, and the litigation would conclude.

The Court in *Newell*, another putative TCPA class action, aptly explained how bifurcation resolves the tension between individual and class discovery:

> Everything considered, the Court finds that bifurcating discovery into two phases (*i.e.*, limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff.

2020 WL 13568762, at *3. The same is true here.

### B.   Plaintiff's Individual TCPA Claims Present Case- and Class-Dispositive Threshold Issues So There Will Not Overlap in Discovery.

Bifurcating discovery is appropriate here because broad class discovery "is not necessary to address certain issues that may be dispositive of Plaintiff's individual claims" or his "ability to bring the asserted claims" in this TCPA case. *Osidi*, 2022 WL 623733, at *2. As explained herein, narrow, case-dispositive issues include whether Plaintiff consented to the calls, whether Plaintiff received an actionable call to a "residential" line, whether Plaintiff registered his number on the Do Not Call Registry, whether he received more than one call from Agility within a 12-month period, whether Plaintiff received any calls from Surkes that used pre-recorded messages, and whether Agility is directly or vicariously liable for alleged conduct of Surkes.

- 8 -

For example, for his DNC Claim, Plaintiff must prove he received more than one call from Agility within a 12-month period. *See* 47 U.S.C. § 227(c)(5) (providing a private right of action if a person "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection"). But Surkes denies calling Plaintiff more than once within a 12-month period. *See* Doc. 23 ¶¶ 32-47. Indeed, the only call that Plaintiff alleges he talked with Surkes (or anyone at all) was the single call on October 30, 2025. *See id.* Consequently, if Plaintiff only received a single call from Surkes, and none of the other four calls described in Plaintiff's FAC came from him or Agility, then Plaintiff cannot maintain his DNC claim in this action.

Similarly, both Defendants deny calling Plaintiff using pre-recorded messages. *See* Doc. 22 ¶¶ 43, 45, 122 & Doc. 23 ¶¶ 43, 45, 122 (denying same). If no pre-recorded messages were used to call Plaintiff, then Plaintiff cannot maintain his Pre-Recorded Messages Claim either. And if none of the other calls described in the FAC were placed by Surkes or Agility, then neither of them can be responsible for such calls (regardless of whether pre-recorded messages were used for such calls).

Furthermore, it is questionable whether Plaintiff actually uses the telephone number at issue for residential purposes. Given Plaintiff's serial filing of TCPA claims—at least 7 of which have been filed within a less than 1-year timeframe including this action—the legitimacy of whether Plaintiff uses such telephone number for residential purposes is in serious doubt. Rather, Agility strongly suspects that Plaintiff (like many serial TCPA litigants) uses such telephone number to sign up to be called so that he can bring TPCA lawsuits in the first place. Perhaps not coincidentally, Plaintiff has brought TCPA class actions against at least four companies in the insurance industry. *See* Section I, *supra*. Plaintiff's current lawsuit against Agility is the fifth such TCPA lawsuit. Accordingly, discovery specific to Plaintiff concerning the use of this particular telephone number, evidence to establish his use of it for residential purposes (if any), and evidence concerning his use of it to sign up for services or to be called on it, are all unique to Plaintiff and his

- 9 -

4916-0566-3426

individual TCPA Claims in this case to determine not only the merit of his individual TCPA Claims, but also whether he is and will be an adequate and typical class representative. If Plaintiff does not use such telephone number for residential purposes, and instead uses it to effectively set up his own business enterprise to sue under the TCPA, then Plaintiff cannot maintain its DNC Claim either.

For many of these same reasons, the issue of Plaintiff's consent to be called is likewise squarely at issue too. The identity of websites and services that Plaintiff uses, subscribes to, and consents to be called at his telephone number, are all plainly relevant, unique to him, and should be addressed first. Clearly, if Plaintiff consented to the alleged calls, or if the alleged calls came from others not affiliated with Agility, then Plaintiff cannot maintain any of his TCPA Claims against Agility.

These are just some of the examples of the potentially dispositive issues concerning Plaintiff's individual TCPA Claims. These issues, individually or in combination, are relevant to Plaintiff and his TCPA Claims. Resolving them in Agility's favor will resolve the case entirely without any need for class discovery. This efficiency is precisely why multiple district courts have bifurcated discovery in TCPA class action cases. *See, e.g.*, *Fania*, 2024 WL 2607303, at *2-*3 ("[B]ifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation" because "the need for class discovery may be eliminated if [defendant] is able to demonstrate that Fania, the sole named Plaintiff, lacks a viable individual [TCPA] claim."); *Akselrod*, 2021 WL 100666, at *2 ("Limited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive.").  If the targeted bifurcated discovery that Agility proposes reveals that Plaintiff lacks valid TCPA Claims or standing (despite the allegations in his FAC), this entire TCPA case collapses. Moreover, if his individual claim fails, he cannot represent the putative class. *See Osidi*, 2022 WL 623733, at *2; *Newell*, 2020 WL 13568762, at *3.

There is also minimal risk of overlap or duplication of effort in discovery because the bifurcated discovery focuses on Plaintiff's TCPA Claims, not class-wide issues. As

- 10 -

4916-0566-3426

explained above, the narrow issues identified by Agility are unique to Plaintiff and the use of his specific telephone number. These issues may also be dispositive of Plaintiff's individual TCPA Claims and, as a consequence, both his standing and his ability to bring claims on behalf of a putative class. This is just another reason why courts often grant bifurcation in TCPA cases. *See, e.g.*, *Moore*, 2024 WL 175743, at *1 ("The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation [23] because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal."); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) ("[T]he Court also finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery."). Furthermore, discovery concerning these issues is straightforward, including Plaintiff's own records and testimony, and potentially the records and testimony of some third parties, solely as they relate to Plaintiff, his telephone number, and his use of (and consent regarding) such telephone number.

In addition, any potential duplication of discovery is outweighed by the significant efficiencies of potentially ending the litigation on a threshold basis. Plaintiffs facing bifurcation in TCPA cases typically will argue that bifurcation is inefficient and unnecessary—sometimes requiring duplicative or overlapping work between phases. But even if that were true, the efficiency of bifurcated discovery outweighs any minimal overlap. *See Chenault, v. Beiersdorf, Onc.*, No. 1:20-CV-174, 2020 WL 5016795, at *3 (S.D. Ohio Aug. 24, 2020) (granting motion to bifurcate over opposition because "while class issues and merit-based discovery may be somewhat enmeshed—there should not be considerable overlap" and "efficiency and judicial economy" favor bifurcation). In short, where there are narrow questions unique to Plaintiff, as here, they do not bear on the putative class, and therefore, the benefits of bifurcation outweigh any minor risk of overlapping discovery.

- 11 -

4916-0566-3426

**C.** **<u>Bifurcation of Discovery Promotes Rule 23 and Judicial Economy.</u>**

As explained herein (and to minimize repetition), bifurcation will promote judicial economy and Rules 1 and 23 because it will be more efficient, cost effective, and less burdensome to all parties involved. Also, where, as here, Plaintiff is a serial TCPA litigant and has not been certified as a class representative in any TCPA class action, then "establishing whether Plaintiff is a typical and adequate representative as early as possible could help this case move more expeditiously." *See Sapan*, 2025 WL 1932935, at \*2-3 (citing multiple cases). Indeed, the "distinct question of Plaintiff's suitability to represent a class is the sort of discrete threshold issue that can support bifurcation." *Id.* at \*3.

In addition, because many of the issues specific to Plaintiff's TCPA Claims are dispositive, bifurcation "has the potential to save the parties and the Court from substantial costs and burdens associated with whole sale class action discovery." *See Newell*, 2020 WL 13568762, at \*3. Accordingly, both of these factors also favor bifurcation of discovery in this case.

**D.** **<u>Bifurcation Will Not Prejudice Plaintiff or the Putative Classes.</u>**

Plaintiff will not be prejudiced if the Court bifurcates discovery. At most, there will only be a minimal delay before proceeding with class discovery if Plaintiff demonstrates a genuine issue of fact on his individual TCPA claims.

By contrast, forcing Agility to engage in expensive and exhaustive class discovery when there are concerns with Plaintiff's individual case is prejudicial because of the asymmetrical costs to Agility. *See, e.g.*, *Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 WL 8617424, at \*2 (W.D. Wash. Sept. 30, 2020) ("It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Loreaux v. ACB Receivables Mgmt., Inc.*, No. CIV.A. 14-710 MAS, 2015 WL 5032052, at \*4 (D.N.J. Aug. 25, 2015) ("[T]he Court finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery."); *Busk v. Integrity Staffing Sols., Inc.*, No. 2:10-CV-1854-RLH-NJK, 2013 WL 4786254, at \*2 (D. Nev. Sept. 5, 2013) ("Plaintiffs are

4916-0566-3426

seeking to pursue a class action which will include nationwide discovery costs and legal fees and ultimately be very costly and burdensome for Defendant."). Such asymmetrical costs make bifurcated discovery in this case even more appropriate. *See Akselrod*, 2021 WL 100666, at *2 ("Limited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive.").

There is no question that Plaintiff's assertion of a class action involves a proposed nationwide class that will increase the scope of discovery and may lead to a waste of party resources if Plaintiff's individual TCPA claims are ultimately unfounded. *See* Doc. 13 at 16 (proposing Plaintiff can represent two nationwide classes of individuals who have received calls over the last four years). Forcing Agility to engage in broad and burdensome class discovery at this time would be inherently and unfairly prejudicial to Agility if Plaintiff is shown to lack standing or unable to prove his individual TCPA claims. Plaintiff's standing and the validity of his TCPA claims can be addressed quickly, efficiently, and cost-effectively by focusing on a short initial discovery phase on the merits of his individual TCPA claims.

Moreover, Plaintiff and his counsel should be <u>equally</u> interested (if not more so) in determining whether Plaintiff's individual TCPA claims have any merit <u>early</u> in this case before pursuing expensive and time-consuming class discovery. If Agility's targeted discovery reveals Plaintiff lacks standing, consented to the alleged calls, did not receive any calls in violation of the TCPA, or is not an adequate class representative because he is a professional serial litigant with a pattern of filing TCPA class action lawsuits (as Agility believes to be the case based on Plaintiff's multiple other filings), summary judgment briefing and the Court's ruling on these narrow issues would be simple and swift. *Sapan*, 2025 WL 1932935, at *2-*3 (granting motion to bifurcate discovery in part based on the plaintiff's status as a serial plaintiff because it may affect whether "plaintiff is a typical and adequate class representative" and his suitability as a plaintiff "is the sort of discrete threshold issue that can support bifurcation").

- 13 -

4916-0566-3426

Agility anticipates that Plaintiff will argue prejudice by speculating about the potential loss of evidence over time. But any such concerns are unfounded and mitigated by Agility's litigation hold, which Agility has initiated, and which will preserve relevant evidence to the extent it exists. *See Babare*, 2020 WL 8617424 at *2 ("Sigue Corporation *has* confirmed that it has implemented a litigation hold, and Mr. Babare can address any alleged spoliation by resorting to the ordinary remedies that are available to any litigant." (internal citation omitted)).

In summary, any argument of purported, hypothetical prejudice from bifurcated discovery is far outweighed by the significant prejudice Agility would suffer by having to engage in costly, burdensome, and potentially wasteful class discovery. This is especially the case when there are plainly dispositive issues of concern that are specific and unique to Plaintiff concerning his individual TCPA Claims. Simply put, bifurcated discovery is more efficient and has the potential to end this case economically for all parties, while the proceedings are still early in the case.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Agility respectfully requests that the Court grant this Motion, bifurcate discovery in this case, and enter the proposed order submitted concurrently herewith.

Specifically, Agility proposes the following bifurcated schedule, consistent with its proposal in the Joint Proposed Case Management Plan filed July 24, 2026. *See* Doc. 29 at 6-7.

- Phase 1 discovery concerning the issues specific to Plaintiff's individual TCPA Claims will run from August 28, 2026 to December 18, 2026.
- Dispositive motions on the merits of Plaintiff's individual TCPA claims are due January 15, 2027.
- Phase 2 discovery concerning class wide issues, if necessary, will commence after the Court's resolution of the parties' dispositive briefing on Phase 1.

SNELL & WILMER

- 14 -

4916-0566-3426

This scheduling will ultimately conserve the parties' and the Court's resources and ensure an orderly and efficient determination of this case.

Dated: August 4, 2026                    SNELL & WILMER L.L.P.


By: */s/  Anthony T. King*
    Anthony T. King
    Megan M. Carrasco
    One East Washington Street
    Suite 2700
    Phoenix, Arizona 85004-2556

    *Attorneys for Defendant Agility*
    *Insurance Services, LLC*

- 15 -

4916-0566-3426